## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 20 2016, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Andrea L. Ciobanu
Alex Beeman
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Kathleen M. Sweeney
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Kirsten L. Nolan,<br>*Appellant-Respondent,*<br><br>v.<br><br>Matthew A. Huff,<br>*Appellee-Petitioner.* | May 20, 2016<br><br>Court of Appeals Case No.<br>49A05-1511-DR-1868<br><br>Appeal from the<br>Marion Superior Court<br><br>The Honorable Gary L. Miller,<br>Judge<br>The Honorable Deborah J. Shook,<br>Master Commissioner<br><br>Trial Court Cause No.<br>49D03-1209-DR-36714 |

**Kirsch, Judge.**

[1] Upon remand from this court, the trial court issued an order in this post-dissolution custody matter. Kirsten L. Nolan ("Mother") appeals and raises the following two restated issues:

> I. Whether it was error for the trial court to modify physical custody of the parties' children where Mother had filed a request to relocate with the children, but neither party had filed a motion to modify custody; and

> II. Whether the trial court's decision to modify physical custody of the parties' children was clearly erroneous.

[2] We affirm.

## Facts and Procedural History

[3] Father and Mother were married on August 9, 2003, and Father filed for dissolution in September 2012. The parties have two children, twins, born in 2010. At some point during the course of the proceedings, Father began dating a woman named Kim Mills ("Kim" or "Girlfriend") and Mother began dating Kim's then-husband, Anthony Mills ("Tony" or "Boyfriend").[1]

[4] The parties successfully mediated the child-related issues,[2] and the resulting September 2013 Partial Settlement Agreement stated, in pertinent part,

---

[1] The record before us indicates that, for a period of time, Mother and Girlfriend worked together at IU Health and that their families were friends with each other.

[2] The parties were not able to resolve property division issues in mediation, and those matters, unrelated to this appeal, went to a final hearing.

"Neither parent's significant other[] shall be left alone with the children without the parent being present." *Appellant's App.* at 23.[3] The trial court incorporated the agreed-upon matters into the March 2014 Decree of Dissolution ("the Decree"), including the following stipulation by the parties: "The parties stipulate that Mother's boyfriend, Anthony Mills, will not live with Mother or be left alone with the children." *Id.* at 39. The Decree denied Mother's previously-filed request to relocate with the children to Colorado, and it provided that Father was entitled to parenting time in excess of the Indiana Parenting Time Guidelines, in accordance with the parties' Settlement Agreement. Under that arrangement, the weekly schedule was as follows: Father had the children every other weekend, and, in addition, on the weeks preceding his alternating weekends, he had the children on Tuesday overnight; on the weeks preceding Mother's weekends, Father had the children on Tuesday evenings for several hours and also Thursday overnight. *Id.* at 20-21, 39. Father also exercised summer and holiday time with the children according to an agreed-upon schedule.

[5] Following the issuance of the Decree, Mother filed, among other things, a motion to correct error and a motion to reconsider. In May 2014, approximately two months after the Decree was issued, Mother filed another

---

[3] We note that the Appellant's Appendix that was filed electronically is not identical to the hard copy that was also submitted, which appears to be the Appendix from the parties' prior appeal to this court; the two are substantially the same, other than the electronically-filed Appendix appears to have a more complete Chronological Case Summary, ending with an entry dated November 25, 2015. We will refer to the pages of the electronically-filed Appendix.

motion to relocate, in which she sought permission to move with the children to Seymour, Indiana where her parents and other family members live and permission to allow Boyfriend to live with her. In response, Father filed a motion in opposition to Mother's request to relocate, and he filed a motion for rule to show cause, alleging that Mother was allowing Boyfriend to live with her in violation of the Decree.

[6] On May 29 and June 6, 2014, the trial court heard evidence on the various pending motions. With regard to her desire to move to Seymour, Mother explained that her parents live there, and they had been involved in providing childcare to the twins since birth, noting that the children have, and have always had, bedrooms and toys and belongings at that residence. Mother testified that her parents planned to have her take over the payments on the home. Mother proposed that, if the court would grant her request to move, the visitation exchanges be ordered to take place at Father's place of employment in Edinburgh, Indiana. Upon questioning, Mother stated that, on average, Boyfriend stayed overnight at her home 3-4 nights per week in April and May, following the Decree. Mother and Boyfriend maintained that her home was not his "legal residence" and that his "legal residence" was at his brother's home. *Tr.* at 76, 114.

[7] Girlfriend also testified at the June 6 hearing. She testified that during her marriage to Tony, she observed frequent instances of anger and violence by him toward their two children, who at the time of the hearing were eleven and thirteen years old. She described that he was particularly physically violent

with the older child, hitting him with objects and being verbally abusive toward both children. She testified that Tony raped her approximately twenty times in about an eighteen-month period when she refused to have sex with him. *Id.* at 121.

[8] Father testified that he opposed Mother's request to relocate to Seymour with the children, believing that it would reduce his share of quality time with the children. However, if the trial court chose to grant Mother's request to move, he asked the trial court to adopt his proposed modified parenting time schedule, which he referred to as a "5-2" schedule,[4] whereby the parents alternate exercising a five day/two day schedule with the children. *Pet'r's Ex.* A. Father testified that his proposal would reduce the number of visitation exchanges in a week, thereby reducing travel time as well. Father opposed Mother's request to allow Boyfriend to live with her, noting concern about issues of anger and violence and alleged "internet sexual activities." *Tr.* at 73. He requested that the prior order, requiring that Boyfriend not be around the parties' children unless Mother was present, remain in effect.

[9] On November 10, 2014, the trial court issued an order ("November 2014 Order"), which, among other things, granted Mother's request to relocate with

---

[4] Under a "5-2" parenting time schedule, one parent exercises five days with the children and the other parent receives two days in a given week; the following week, it switches so that the parent who last exercised five days with the children, exercises two days with them, and vice versa. Thereafter, the cycle repeats. *Appellant's Br.* at 24 n.10.

the children to Seymour and adopted Father's proposed modified "5-2" parenting time schedule. The November 2014 Order included the following:

> Having considered all the allegations and evidence presented regarding the relocation, the Court grants Mother's petition to relocate to Seymour, but also accepts and order's [sic] Father's custody and parenting time plan, as seen in his Exhibit "A" attached hereto. Given that Father will now have a greater number of overnights per month than Mother, he now has primary physical custody. The parties are ordered to submit revised support worksheets within 10 days.

*Appellant's App*. at 49-50.

[10] As to Father's motion for rule to show cause, which alleged Mother was violating the Decree by allowing Boyfriend to live at her residence, the trial court expressed that it was "troubled" by Mother's "blatant disregard of its prior order, under the guise of Mother's house not being [Boyfriend's] 'legal residence,'" and it found her in contempt. *Id*. at 48-49. The trial court ordered:

> Mother may not allow [Boyfriend] to stay overnight in the same house as her children, until further order of this Court. The sanction for her contempt will remain under advisement, and its nature and severity will be determined by how well Mother abides by this Court's orders, and whether parental alienation or other improper influence regarding the children continues to be an issue.

*Id*. at 50.

Mother appealed. Among other things, she asserted that it was error for the trial court to *sua sponte* modify custody, when neither she nor Father had filed a motion to modify custody. She also argued that the trial court abused its discretion when it modified custody because it did not find a substantial change in circumstances to warrant modification and it did not find the modification was in the best interest of the children. On August 24, 2015, a panel of this court issued a memorandum decision, *Nolan v. Huff,* No. 49A04-1412-DR-565 (Ind. Ct. App. Aug. 24, 2015). This court rejected Mother's claim that the trial court erred because it *sua sponte* modified custody. On that issue, the *Nolan* court stated,

> The court did not change custody *sua sponte.* Pursuant to Trial Rule 15(B), if "issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be [tr]eated in all respects as if they had been raised in the pleadings." *See Higginbotham v. Higginbotham,* 822 N.E.2d 609, 613 (Ind. Ct. App. 2004). The relocation statute states in pertinent part: "Upon [motion] of a party, the court shall set the matter for a hearing to review and modify, if appropriate, *a custody order,* parenting time order, grandparent visitation order, or child support order." Ind. Code § 31-17-2.2-1(b) (emphasis added). Mother impliedly consented to have custody considered at the hearing when she petitioned to relocate, and the court did not modify custody *sua sponte. See Baxendale v. Raich,* 878 N.E.2d, 1252, 1253 (Ind. 2008) (trial court may order a change of custody on relocation).

*Id*. at *1 n.3.

[12] With regard to the change in physical custody, the *Nolan* court determined that the trial court failed to provide an explanation to support its conclusion for a change of custody. It explained,

> While the trial court did state it "considered all the allegations and evidence presented," . . . it did not articulate what allegations and evidence were considered that would impact the best interests of the children. Our Supreme Court held, in *Wilson v. Myers,* 997 N.E.3d 338 (Ind. 2013), that although the trial court had mentioned "looking at 'the whole picture' in making its decision, . . . [the order] provided no insight into what was contained in that picture[.]" *Id.* at 341. This is analogous to the situation before us. Much testimony was heard by the trial court but nothing was reduced to writing.

> While it seems apparent the move was made in good faith because the marital residence is either for sale or sold, that is merely the first step of consideration of a relocation request. *See* Ind. Code § 31-17-2.2-5. After good faith is established, the nonrelocating parent must show the move is not in the best interest of the children. *Id.* We cannot assume from the order entered that the court so found. We have no indication how the trial court applied any factors from either section 8 or the relocation statutes. *By not providing a justification, the trial court abused its discretion when modifying custody, and we reverse and remand to the trial court to explain why Mother's relocation requires a modification of custody.*

*Id.* at *3-4 (emphasis added).

[13] Mother did not ask for rehearing on the *Nolan* decision or seek transfer to the Indiana Supreme Court. Thereafter, on October 8, 2015, the trial court issued

an Order on Modification of Custody ("Order on Remand").[5]  In pertinent part,

it stated:

> The Appellate Court found Judge McCarty's Order lacking the
> requisite explanation for this modification under either Ind. Code
> 31-17-2-21 (factors the court must consider on a request to
> modify custody) or Ind. Code 31-17-2.2-5 (factors the court must
> consider on a contested relocation when modifying custody).
>
> While the court must consider the statutory factors in modifying
> custody, these are not the sole factors considered.  In this
> particular case, the children are very young and a number of the
> statutory factors are geared toward children who have friends in
> their neighborhoods, friends in school and have the ability to
> interact with their communities.  Due to the children's young age
> many of those factors were inapplicable.
>
> . . . .
>
> In analyzing the facts presented to the court which resulted in the
> November 2014 Order, the court emphasized facts relating to
> Mother's violation of the stipulated Order from the Decree that
> barred Mother from allowing [Boyfriend] to live with her.
> Mother was also ordered not to leave the children alone with
> [Boyfriend].  Mother attempted to minimize her violation of the
> stipulated Order by using a distinction between "living with her"
> and [Boyfriend] having a "legal residence" elsewhere.  Mother
> was found to have blatantly disregarded the court's prior order
> under the guise of Mother's house not being [Boyfriend's] "legal

---

[5] We note that the Honorable Patrick L. McCarty retired sometime after issuing the November 2014 Order
that granted Mother's request to relocate to Seymour, found Mother in contempt, and modified physical
custody to Father.  The Honorable Gary L. Miller and Master Commissioner Deborah J. Shook signed the
October 2015 Order.

residence." The stipulated order arose after Mother admitted that [Boyfriend] had engaged in soliciting sexual partners through the internet. Mother admitted [Boyfriend] had been and continued to live in Mother's home 3-4 nights per week. Mother's continuing violation of the court's Order and attempt to distinguish the living arrangements was dishonest.

*Appellant's App.* at 53-55. The trial court observed that Mother was aware of the allegations concerning anger and physical violence by Tony toward his children, as well as Kim's testimony that he raped her numerous times, and

> [d]espite knowing these issues and agreeing to not allow him to live with her, Mother continued to expose her children to this individual, and allowed him to live in the home with them. Mother disregarded the court's order for her personal gratification and as such she disregarded her children altogether.
>
> *Mother's continued disregard of the court's order regarding [Boyfriend], her dishonesty about it, and her failure to consider as paramount the safety of her children serves as the substantial change in circumstances which supports the modification of custody from Mother to Father.*

*Id*. at 55 (emphasis added). The trial court added that even though the November 2014 Order did modify custody, "Judge McCarty gave both parents nearly equal parenting time as in a shared custody arrangement," which was

"more than generous given the facts of this case and the level of animosity between these parents."[6] *Id*. at 56. Mother now appeals.[7]

# Discussion and Decision

## I. Authority to Modify Custody

[14] Initially, Mother claims that the trial court committed reversible error in modifying custody of the parties' children "where neither party moved for a modification of custody." *Appellant's Br*. at 17, 20-21. Mother concedes that she "raised this same issue" in her first appeal, and that the *Nolan* court rendered a decision against her on the matter, which she "did not challenge by way of a petition for rehearing or a petition for transfer," but she asks us to nevertheless reconsider the issue. *Id*.

[15] The doctrine of *res judicata* prevents the repetitious litigation of that which is essentially the same dispute. *French v. French*, 821 N.E.2d 891, 896 (Ind. Ct. App. 2005). The principle of *res judicata* is divided into two branches: claim preclusion and issue preclusion. *Id.* Claim preclusion applies where a final judgment on the merits has been rendered which acts as a complete bar to a subsequent action on the same issue or claim between those parties and their

---

[6] In its Order on Remand, the trial court noted that "these are chronically high conflict parents," and it expressed frustration that "[t]he children are caught squarely in the middle," which is "the ongoing tragedy in this case." *Appellant's App*. at 54, 56. It cautioned the parents to "consider how their constant bickering will affect their children." *Id*. at 56. We echo that sentiment.

[7] Contemporaneously with the filing of her Reply Brief, Mother filed a Motion to Strike portions of Father's Appellee's Brief. We denied Mother's motion by separate order.

privies. *Id.* Issue preclusion, also referred to as collateral estoppel, bars the subsequent relitigation of the same fact or same issue between the same parties or their privies where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in a subsequent action. *Id.* Where issue preclusion applies, the previous judgment is conclusive only as to those issues actually litigated and determined therein. *Id.*

[16] Here, the trial court's November 2014 Order granted Mother's request to relocate but modified physical custody to Father. Mother appealed, specifically raising the issue of whether it was an abuse of discretion for the trial court to change custody "*sua sponte.*" *Nolan*, at *1 n.3. The *Nolan* court rejected her claim of error. *Id.* According to the record before us, Mother did not in any way seek review of the *Nolan* decision; she did not ask for rehearing, seek transfer, nor did she file any objection with the trial court. Based on the doctrine of *res judicata*, we conclude that the claimed error has previously been decided, and the issue can, therefore, no longer be litigated.

## II. Decision to Modify Custody

[17] Next, Mother claims that the trial court erred in finding that there had been a substantial change in circumstances to warrant a modification in custody and that the modification was in the children's best interests. As Mother observes, "In this case, certain findings and conclusions were made by the trial court," and, accordingly, we "'shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial

court to judge the credibility of the witnesses.'" *D.C. v. J.A.C.*, 977 N.E.2d 951, 953 (Ind. 2012) (quoting *Best v. Best*, 941 N.E.2d 599, 502 (Ind. 2011) and Indiana Trial Rule 52(A)); *Appellant's Br.* at 20. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. *Id.* "Judgments in custody matters typically turn on essentially factual determinations and will be set aside only when they are clearly erroneous." *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). Additionally, there is a well-established preference in Indiana "for granting latitude and deference to our trial judges in family law matters." *Steele-Giri v. Steele*, -- N.E.3d --, No. 45S04-1512-DR-682 (Ind. Mar. 15, 2016). As the *Steele-Giri* Court recently reiterated:

> Appellate courts are in a poor position to look at a cold transcript of the record, and conclude that the trial judge, who saw the witnesses, observed their demeanor, and scrutinized their testimony as it came from the witness stand, did not properly understand the significance of the evidence. On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal. Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment.

*Id.* at *3 (internal citations and quotations omitted).

[18]  Indiana Code section 31-17-2-21 ("Section 21") provides that a trial court may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one or more of the

factors that the court may consider under Indiana Code § 31-17-2-8 ("Section 8"). Section 8 provides that the trial court is to consider all relevant factors, including:

> (1) The age and sex of the child.
> (2) The wishes of the child's parent or parents.
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
> (4) The interaction and interrelationship of the child with:
>     (A) the child's parent or parents;
>     (B) the child's sibling; and
>     (C) any other person who may significantly affect the child's best interests.
> (5) The child's adjustment to the child's:
>     (A) home;
>     (B) school; and
>     (C) community.
> (6) The mental and physical health of all individuals involved.
> (7) Evidence of a pattern of domestic or family violence by either parent.
> (8) Evidence that the child has been cared for by a de facto custodian.

[19] The Family Law title in the Indiana Code includes a chapter dedicated to addressing the relocation of a parent. *See* Ind. Code ch. 31-17-2.2. If a parent desires to relocate, he or she must file a notice of the intent to move. Ind. Code § 31-17-2.2-1(a). The non-relocating parent may thereafter file a motion seeking an order to prevent the relocation, and upon motion of either parent, the trial court must hold a hearing to review and modify custody "if appropriate." Ind. Code § 31-17-2.2-1(b). "In determining whether to modify a custody order," the court is directed to consider a number of relocation-oriented factors that are

set out in section 31-17-2.2-1(b) – such as the financial impact of relocation on the affected parties, the motivation for the relocation, and the effects on the child and parents – and other factors "identified in Section 8 as relevant to every change of custody." *Baxendale*, 878 N.E.2d at 1256. Subsection 2(b) of the statute expressly provides that "the trial court may consider a proposed relocation of a child as a factor *in determining whether to modify a custody order*[.]" Ind. Code § 31-17-2.2-2(b) (emphasis added).

[20] Our Supreme Court has rejected the proposition that Section 21 requires that a change in one of the original Section 8 factors must be found before a change of custody may be ordered in a relocation, noting that chapter 2.2 "is a self-contained chapter and does not by its terms refer to the general change of custody provisions." *Baxendale*, 878 N.E.2d at 1257. Furthermore, chapter 2.2. "incorporates all of the Section 8 considerations, but adds some new ones," and because consideration of the new factors might change the balance, "the current statutory framework does not necessarily require a substantial change in one of the original Section 8 factors." *Id*.

[21] Here, in its Order on Remand, the trial court found that "Mother's continued disregard of the court's order regarding [Boyfriend], her dishonesty about it, and her failure to consider as paramount the safety of her children serves as the substantial change in circumstances which supports the modification of custody from Mother to Father." *Appellant's App*. at 55. Mother argues that, contrary to the Order on Remand: (1) she did not "continually disregard" an order, stating, "This is the only time that Mother has been held in contempt by the Court's

order"; (2) she "was not dishonest about [Boyfriend] staying with her," given that she "<u>voluntarily and honestly</u>" testified to the court that he stayed three to four nights a week; and (3) although Boyfriend "did stay with Mother from time-to-time," there was "<u>no</u> evidence" that the children's health or safety ever was at issue. *Appellant's Br.* at 26-27 (emphasis in original). She argues that Father failed to prove that the modification was in the children's best interests and that her relationship with Boyfriend "is insufficient" to justify modification. *Id.* at 28. That is, she argues, the trial court's focus on the Boyfriend was erroneous: "[Boyfriend] is irrelevant to whether a modification is in [the children's] best interests and [his] relationship <u>with Mother</u> has <u>no</u> bearing on the best interests of the parties' children." *Id.* (emphasis in original). We cannot agree.

[22]     The March 2014 Decree ordered that Boyfriend was not to live with Mother, yet for the two months that followed, Boyfriend stayed with Mother, on average, three to four nights per week. The trial court considered this conduct a blatant disregard of its prior order and, after hearing Mother's testimony on the subject, considered Mother's "attempt to distinguish the living arrangement" as not his "legal residence" to be dishonest. *Appellant's App*. at 55. The trial court also heard testimony about Boyfriend, specifically allegations of violence against his children and then-wife (now Father's girlfriend). The trial court's Order on Remand stated, "The children's health and safety is of great concern to this court in this and any other dissolution proceeding," and Mother, who

allowed Boyfriend to stay overnight at her home, failed to place the safety of her children as the paramount consideration. *Id*.

[23] "Appellate judges are not to reweigh the evidence nor reassess witness credibility, and the evidence should be viewed most favorably to the judgment." *Best v. Best,* 941 N.E.2d 499, 502 (Ind. 2011). Here, Mother sought to relocate with the children to Seymour, and the trial court granted her request to do so, but it also adopted Father's proposed "5-2" parenting schedule, which somewhat increased Father's overnights with the children, but reduced the number of visitation exchanges in a week and the accompanying travel time for the children. Under that new parenting schedule, Father, at least in some months, would have the children a slightly greater number of days than would Mother and, as a result, the trial court determined, "he now has primary physical custody." *Appellant's App*. at 50. "On appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." *Kirk v. Kirk,* 770 N.E.2d 304, 307 (Ind. 2002). We cannot say that the trial court's decision to modify physical custody to Father was in error.

[24] Affirmed.

[25] Mathias, J., and Brown, J., concur.