**Jeancois APPOLON, Appellant–Respondent,**

v.

**Teresa (Appolon) FAUGHT, Appellee–Petitioner.**

No. 55A05–0304–CV–158.

Court of Appeals of Indiana.

Sept. 22, 2003.

Affirmed.

---

1. The amendments were filed on May 19 and July 14, 2003.

Swaray E. Conteh, Indianapolis, IN, Attorney for Appellant.

Michael A. Ksenak, Martinsville, IN, Attorney for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent Jeancois Appolon appeals the trial court's ruling regarding the denial of visitation with his minor children. Specifically, Jeancois argues that the trial court abused its discretion by granting sole custody of the children to his former wife, appellee-petitioner Teresa (Appolon) Faught and denying him any rights to visitation. Finding that there is a rational basis in the record supporting the trial court's determination, we affirm.

### FACTS

Jeancois is a native and citizen of Haiti. In 1998, he came to the United States, and on April 18 of that year, Jeancois and Teresa were married in Martinsville. Their first child was born on May 29, 1999. Teresa again became pregnant in November 1999. In February 2000, Jeancois and Teresa separated. Teresa filed for dissolution of their marriage on February 22, 2000. At the March 7, 2000 hearing, Teresa testified that Jeancois had beaten her, raped her, and threatened to run away with the children.[1] Teresa also introduced into evidence a letter written by Jeancois in which he admitted molesting the children. Based on these allegations, the trial court determined that visitation "at the present time" would be harmful to the children and thus denied visitation. Appellant's App. p. 9. The trial court twice

---

1. Teresa also has a son from a previous marriage who was eight years old during the dissolution proceedings.

more denied Jeancois's requests for visitation in April and May 2000. On July 24, 2000, Teresa gave birth to their second child. Jeancois requested that the trial court grant him visitation with the child. This request was similarly denied.

During the divorce proceedings, Teresa submitted written statements to the Morgan County Prosecutor's Office in support of her allegation that Jeancois physically abused her. In April 2001, the prosecutor filed charges against Jeancois for an alleged domestic violence incident that occurred on September 20, 1999. These charges were dismissed as a result of a directed verdict that was granted in Jeancois's favor. No charges were filed for the alleged rape. Teresa also took the letter that Jeancois had written her to the Child Protection Agency in Martinsville. The Child Protection Agency has taken no action based on the letter. Jeancois now appeals the denial of visitation.[2]

### DISCUSSION AND DECISION

■ Jeancois argues that the trial court abused its discretion by denying him visitation with his children. Specifically, he contends that the evidence demonstrated that he was at least entitled to supervised visitation.

Initially, we note that upon review of the trial court's determination of a visitation issue, we will reverse only when the trial court manifestly abused its discretion. *Reno v. Haler*, 734 N.E.2d 1095, 1101 (Ind. Ct.App.2000). No abuse of discretion occurs if there is a rational basis in the record supporting the trial court's determination. *Id.* We will not reweigh the evidence or judge the credibility of witnesses, but rather we will look only at the facts most favorable to the judgment and the

reasonable inferences therefrom. *Hanson v. Spolnik*, 685 N.E.2d 71, 79 (Ind.Ct.App. 1997).

Here, the evidence presented to the trial court shows that Jeancois physically abused Teresa by hitting her with his fists and a belt. Tr. p. 8. Teresa testified that Jeancois raped her in November 1999. Tr. p. 7. Jeancois also threatened to take the children and run. Tr. p. 35. And most importantly, Jeancois wrote Teresa a letter in which he says he has molested the children. Appellant's App. p. 105–06.

Jeancois now argues that the trial court improperly considered the allegations of abuse because he was never convicted of domestic abuse or rape. Additionally, he contends that he believed that the word "molest" was a synonym for the word "love." Essentially, Jeancois invites us to reweigh the evidence, an invitation we decline to accept. The trial court determined that the evidence presented by Teresa was credible, thus leading the magistrate to determine that "visitation, at this present time, would be harmful to the children of the parties." Appellant's App. p. 9. We will not now second-guess the trial court's conclusion.

■ In a related argument, Jeancois contends that he should have been granted visitation because Indiana Code section 31–17–2–8.3 creates a rebuttable presumption of supervised visitation for a noncustodial parent who has been convicted of a crime involving domestic violence that was witnessed or heard by the child. Specifically, Jeancois argues that if this presumption exists for parents who were *convicted* of these acts, he should presumably be granted visitation because he was mere-

---

**2.** We remind both parties that the statement of facts is to be narrative in form and is not to be argumentative. App. R. 46(A)(6). Neither a bullet point list of witness testimony nor advocacy should be included.

ly *accused* of domestic violence, but never convicted.

 No case has yet interpreted this statute. "Where a statute has not previously been construed, as here, the interpretation is controlled by the express language of the statute and the general rules of statutory construction." *Blackmon v. Duckworth,* 675 N.E.2d 349, 351 (Ind.Ct. App.1996). Statutes relating to the same general subject matter are in pari materia and should be construed together so as to produce a harmonious statutory scheme. *Visitation of J.P.H.,* 709 N.E.2d 44, 46 (Ind.Ct.App.1999). Moreover, courts will reject an interpretation of a statute that produces an absurd result. *Id.*

The interpretation that Jeancois offers would require the courts to presume, no matter what the circumstances, that all non-custodial parents should be granted at least supervised visitation rights. In effect, such a construction would abrogate the discretion entrusted to the courts by Indiana Code section 31–17–4–1, which states, "A parent not granted custody of the child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation by the noncustodial parent might endanger the child's physical health or significantly impair the child's emotional development." Ind.Code § 31–17–4–1. The legislature could not have intended to tie the hands of the courts and render Indiana Code section 31–17–4–1 meaningless when it enacted Indiana Code section 31–17–2–8.3. Thus, we decline to interpret this statute as Jeancois suggests. Supervised visitation is not the lowest common denominator, and we must conclude from the circumstances here that the trial court was within its discretion when it denied visitation to Jeancois altogether.

 By this holding, we do not countenance the unwarranted denial of appropriate access to the children of a non-cus-

todial parent. Indeed, the right of non-custodial parents to visit with their children is a "sacred and precious privilege." *McCauley v. McCauley,* 678 N.E.2d 1290, 1292 (Ind.Ct.App.1997). Ideally, a child should have a well-founded relationship with each parent. *Johnson v. Nation,* 615 N.E.2d 141, 146 (Ind.Ct.App.1993). That said, Jeancois may, in the future, demonstrate to the trial court that he no longer poses a threat to his children's physical health or emotional development. At that juncture, the decision regarding visitation rights should be re-evaluated.

Affirmed.

BROOK, C.J., and SHARPNACK, J., concur.