**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**WILLIAM P. MEANS**
Hollingsworth & Zivitz, P.C.
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**GEORGE P. LOHMEIER**
Allen Wellman McNew, LLP
Greenfield, Indiana

**FILED**
Apr 24 2012, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| LEANNE KATHLEEN JOHNSON, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  49A02-1109-DR-852 |
| | ) | |
| FLORENZO JOHNSON, JR., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Patrick L. McCarty, Judge
Cause No. 49D03-0907-DR-32424

**April 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

F.J. ("Father") and L.J. ("Mother") originally agreed to joint legal custody of their two children, F.J. and L.J., but in 2011 the trial court granted Father's petition for modification of joint legal custody, granting Father sole legal custody. Mother raises one issue for our review: whether the trial court abused its discretion by granting Father's request for a modification of legal custody awarding him sole legal custody. Concluding the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

Father and Mother were married in 2002. Their children, F.J. and L.J., were born in 2002 and 2004, respectively. Both children require individualized attention and education at school. F.J. has hearing loss and his fine motor skills are delayed, and L.J. receives speech therapy. In 2009, Mother filed a petition for dissolution of marriage, and in 2010 the parties submitted a mediated agreement. They agreed as to: distribution of property, Father's primary physical custody of the children, joint legal custody, Mother's parenting time pursuant to the Indiana Parenting Time Guidelines, maintenance of civil communication, their intent to agree regarding child support, Father's maintenance of medical insurance for the children, the parties each claiming one dependent exemption for tax purposes, Mother's pursuit of at least one counseling session, division of debts, and other miscellaneous issues. As to school choice, the parties' agreement contained the following provision:

> Parties acknowledge that it is Husband's intent to relocate to the Fisher's [sic] school district and Father will file his Notice of Intent to Relocate once his plans are finalized. Further, parties do agree that the children shall go to school in the district in which the physical custodial parent resides. It is the

2

parties' intent that neither child be relocated to another school district in the middle of a school semester, unless required by the school district in which the children are currently enrolled.

Appellant's Appendix at 20.

In May 2011, Mother filed a notice of intent to relocate and petition for modification of visitation, determination of choice of school, modification of child support, and request for hearing. Father then filed a cross-petition for modification of joint legal custody. The trial court held a hearing on all the issues raised by the parties and issued an order, which stated in relevant part:

> 2. It was further agreed that Father's residence would determine the school district the children would attend. At the time of the mediated agreement Father anticipated moving to Fishers, Indiana, but instead Father refinanced the marital residence and continues to reside in Lawrence Township.
> * * *
> 4. Father now intends to enroll both children in Amy Beverland Elementary School in Lawrence Township, which will be a change in school for both children. Mother disagrees with this decision and asks the Court to find that both children should attend school in Franklin Township where she resides, but because of her recent relocation, [sic] will also necessitate a change of schools for both children.
> * * *
> 7. Our Appellate Courts have held that it is up to the parents to make a joint legal custody relationship work and that it is inappropriate for parents who share joint legal custody to seek the intervention of the divorce court to resolve their disputes regarding the major decisions of their children's upbringing. In addition, it has been held that Indiana trial courts should not be engaged in raising children of divorcing or divorced parents and must not serve as the "referee parent" within a joint legal custodial relationship.
> 8. The Indiana Appellate Courts have also found that parents have a fundamental right to raise their children and that this must be kept inviolate from judicial intervention. If a joint legal custody arrangement fails, it should be modified to a sole legal custody arrangement. Further, when joint parenting becomes a battleground, a modification of the joint legal custodial arrangement is the sensible step to take.

9. This Joint Legal Custodial arrangement has become a battleground whereby the trial court is now being asked to select the school system for the children. Therefore, the current joint legal custody arrangement is not working as the parties intended and it is no longer in the best interest of the children and should be dissolved.

Id. at 7-10 (citations omitted). Mother now appeals. Additional facts will be supplied as necessary.

## Discussion and Decision

### I. Standard of Review

We review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. We set aside judgments only when they are clearly erroneous, and will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment.

Kirk v. Kirk, 770 N.E.2d 304, 307 (Ind. 2002) (quotation and citations omitted). "Therefore, on appeal it is not enough that the evidence might support some other conclusion, but it must positively require the conclusion contended for by appellant before there is a basis for reversal." Id. (quotation omitted).

### II. Modification of Legal Custody

In making an initial determination regarding legal custody, in order to award joint legal custody a trial court must find that an award of joint legal custody would be in the best interest of the child. Ind. Code § 31-17-2-13. In making this determination, a trial court "shall consider it a matter of primary, but not determinative, importance that the persons awarded joint custody have agreed to an award of joint legal custody." Ind. Code § 31-17-2-15. Other factors the court should consider include:

4

(1) the fitness and suitability of each of the persons awarded joint custody;
(2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;
(3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;
(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;
(5) whether the persons awarded joint custody:
     (A) live in close proximity to each other; and
     (B) plan to continue to do so; and
(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

Id.

Pursuant to Indiana Code section 31-17-2-21, a trial court "may not modify a child custody order unless: (1) the modification is in the best interests of the child; and (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 and, if applicable, section 8.5 of this chapter."  This statute applies to both modifications of physical custody and legal custody.  See Higginbotham v. Higginbotham, 822 N.E.2d 609, 611 (Ind. Ct. App. 2004); Apter v. Ross, 781 N.E.2d 744, 758 (Ind. Ct. App. 2003), trans. denied.  The factors provided in Indiana Code section 31-17-2-8 are:

(1) The age and sex of the child.
(2) The wishes of the child's parent or parents.
(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
(4) The interaction and interrelationship of the child with:
     (A) the child's parent or parents;
     (B) the child's sibling; and
     (C) any other person who may significantly affect the child's best interests.
(5) The child's adjustment to the child's:
     (A) home;
     (B) school; and
     (C) community.

(6) The mental and physical health of all individuals involved.
(7) Evidence of a pattern of domestic or family violence by either parent.
(8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 8.5(b) of this chapter.

The section also states a court shall consider "all relevant factors." Id.

Mother argues the trial court abused its discretion by modifying the parties' joint legal custody arrangement to sole legal custody for Father. She contends Father failed to meet his burden to prove the requirements of Indiana Code section 31-17-2-21 were met. Father argues he presented evidence demonstrating the relationship between the parties had become contentious and their ability to make mutually agreeable decisions in how to raise their children had declined. He contends evidence of this change in their relationship was sufficient for the trial court to modify joint legal custody to sole legal custody for Father.

We begin our review by assessing the evidence and reasonable inferences therefrom supporting the trial court's modification of joint legal custody to sole legal custody for Father. The evidence consists primarily of the testimonies of Mother and Father, along with e-mail conversations between the parties, their mediated agreement, their communications with a Franklin Township principal, and the children's report cards.

When asked during the trial court's hearing about his intention to sell the marital residence, as was stated in their mediated agreement, Father replied,

> [P]ending our divorce it was for sale. I tried to ask [Mother] several times to work to list the house while the tax credit was going on. I told her that I would be taking responsibility for any losses on the house, total, and she would not agree to the point where we had to come to court to actually get approved for the work. By that time, though, the house credit had expired. I then found out that I was able to refinance the house. I found that out at the end of October,

6

beginning of November, to which I informed [Mother] that I was refinancing the house and that I was staying at my location until the housing market picks up. I still intend to go to Fishers but right now when the housing market is not doing so well I'm staying put.

Transcript at 50.

After the divorce and prior to the proceedings here at issue, the children were attending different schools – F.J. attended a school in Franklin Township, while L.J. attended a school in Lawrence Township because it offered full-day kindergarten and F.J.'s school did not. Father testified he received a phone call from F.J.'s principal informing Father that F.J. might not be able to continue attending that school because the primary physical custodian, Father, lived in a different township. He testified the principal suggested writing a letter to the superintendent requesting that the children be allowed to attend Franklin Township schools, but advised Father to wait until summer so the children would not face the possibility of having to switch schools during the school year. Father testified he informed Mother of the communications with F.J.'s principal and Mother replied he "need[ed] to fix it." Id. at 53. Father stated he began researching schools within Lawrence Township in February and discovered Amy Beverland Elementary School. He testified Mother "kept harassing" him about writing a letter to the Franklin Township superintendent, so he wrote a draft and sent it to her for any desired amendments. Father testified, "She added some things, sent it to her lawyer. Her lawyer doctored it up, sent me the doc [sic] and pretty much said 'Here you go.' With her, there's no conversations. It's pretty much 'my way or the highway.' There's no compromising with her. So at that point I wasn't going to sit there and argue." Id.

7

Father then testified:

> After I sent that letter I also went to inform her that it was still my intentions [sic] to put the [children] into Amy Beverland in case they don't get to go to Franklin Township and she responded why did I sent [sic] the letter to Franklin Township. Well, the plan was if they don't get into Amy Beverland, we both agreed that Winding Ridge is not a good school for the boys, so if they didn't get into Amy Beverland I would have put them down in Franklin Township.

Id. at 53-54. Then the following exchange occurred:

> Q  So you were playing both sides of the fence because you had to?
> A  Yes.
> Q  Now, . . . do they have an opportunity, then, to go to Amy Beverland?
> A  Yes.  Just this past Friday I got the letter – the e-mails stating that both [children] got accepted to Amy Beverland.

Id. at 54.

Father then stated some of the reasons he preferred Amy Beverland, including a high ISTEP passage rate, strong independent educational programs that both F.J. and L.J. require, and close proximity to Father's home.  During his testimony Father discussed his communications with Mother regarding Amy Beverland:

> Q  When did you communicate that if they didn't get into Amy Beverland then they would go to Franklin Township?
> A  Right after I sent the e-mail to Franklin Township.  We were still waiting on a response back from the superintendent from Franklin Township, at which point I sent an e-mail to [Mother] saying that my plan was for the [children] to go to Amy Beverland but if they didn't get into Amy Beverland, then for them to go to Franklin Township.  To which she responded back to me . . . 'That's fine, we can settle it in court.  I'll take you back to court and have a nice day.'

Id. at 67.  During Mother's testimony, she expressed her desire for the children to attend Franklin Township schools.  She stated her beliefs that Franklin Township schools offered better one-on-one attention and a teaching style more conducive to the children's needs, and

she observed an improvement in F.J.'s engagement in school since he enrolled in Franklin Township.

When asked if the parties disagree about the children's medical attention, Father responded, "We don't . . . . All the [children] have right now are just follow-up appointments, so there's really not much to disagree upon." Id. at 56. Father testified that school choice was a major point of contention between the parties. Further, when asked if other issues came up regarding extra-curricular activites, Father replied, "Yes. We can't seem to agree on extracurricular activities for our [children]." Id. He explained their disagreements regarding whether to enroll the children in cub scouts, the use of supplemental educational tools outside of schoolwork, how to assist their children with homework, what sports the children would play, and whether the children should have the ability to send text messages.

When asked to describe the parties' ability to jointly parent the children, Father replied, "It's hard. Basically there's no compromising whatsoever with her. It's her way or the highway. Obviously we have two different parenting styles. I suggest some things to her and she shoots them down, I'll come back with a little bit of a compromise, asking her to compromise some. She does not." Id. at 60.

Examining the evidence supporting the trial court's judgment, we conclude Father met his burden of establishing that modification to sole legal custody is in the children's best interests and a substantial change has occurred in the relationship of Mother and Father, making communication and cooperation difficult. Indiana Code section 31-17-2-8 does not

9

include the relationship of the biological parents in its specific list of factors a trial court should consider, but that section does state all relevant factors should be considered. The relationship of the parents is relevant to modifying legal custody. Indiana Code section 31-17-2-15 dictates a trial court shall consider whether the parents "are willing and able to communicate and cooperate in advancing the child's welfare" when determining whether to award joint legal custody. Thus, establishing a substantial change in the parents' ability to communicate and cooperate in advancing their children's welfare, along with a demonstration that modification is in the children's best interests, supports a modification of legal custody.[1]

## Conclusion

Evidence in the record supports the trial court's modification of joint legal custody to sole legal custody for Father. We therefore affirm the trial court's order granting Father's petition for modification of joint legal custody and awarding Father sole legal custody.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

[1] Mother also argues Father failed to establish the statutory requirements for modification of custody because he did not present evidence that the deterioration of the parties' relationship was negatively affecting the children. Although the presence of such negative impact would support a determination that modification is in the children's best interests, it is not required by the relevant statutes. For us to consider whether or not modification is in the best interests of the children in light of the lack of evidence showing that changes in the parties' relationship were negatively impacting the children would be to reweigh the evidence, which we will not do.

Similarly, Mother argues the parties' school dispute arose largely due to Father's actions. We disagree with Mother's contention that Father's actions caused the discord and made modification improper. Thus, the argument asks us to reweigh the evidence of whether a substantial change in the parties' relationship occurred, which we will not do.