## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2016, 6:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jared Michel Thomas
Evansville, Indiana

ATTORNEY FOR APPELLEE

Thomas A. Massey
Massey Law Offices, LLC
Evansville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of A.D.:

Abram M. Dwyer,
*Appellant-Defendant,*

v.

Lindsy L. (Redden) Eickhoff,
*Appellee-Plaintiff.*

August 23, 2016

Court of Appeals Case No.
82A01-1512-JP-2308

Appeal from the Vanderburgh
Superior Court

The Honorable Leslie C. Shively,
Judge

Trial Court Cause No.
82D01-0909-JP-601

**Vaidik, Chief Judge.**

# Case Summary

Abram Dwyer ("Father") and Lindsy Eickhoff ("Mother") are the parents of a daughter, A.D. Between 2013 and 2015, they made numerous filings relating to the custody of A.D., including several petitions to modify custody and petitions to have the other parent found in contempt. Following a hearing, the trial court (1) granted sole legal custody to Mother, (2) ordered Father to obtain the court's permission before filing any further custody-modification or contempt petitions, and (3) ordered Father to pay $10,000 of Mother's attorney's fees. We affirm the first two rulings but remand for revision of the award of attorney's fees.

# Facts and Procedural History[1]

This case concerns the custody of A.D., who was born to Mother and Father in 2008. In March 2010, the trial court approved an agreed entry that established Father's paternity, granted primary physical custody to Mother and parenting time to Father, and gave the parties joint legal custody. The parties amended their agreement slightly in December 2011. Then, in November 2013, Father, acting pro se, filed a petition to modify in which he sought additional weekday overnights during the school year. Over the next six months, the parties made

---

[1] Father's Statement of the Case and Statement of Facts do not include any citations to his appendix, in violation of Indiana Appellate Rules 22(C) and 46(A)(5)-(6). His brief does not include a Summary of Argument, in violation of Rule 46(A)(7). And 338 of the 555 pages in his appendix consist of a complete reproduction of the separately filed transcript and exhibits, in violation of Rule 50(F).

additional filings accusing each other of contempt. In early June 2014, the trial court held a hearing and issued an order in which it denied Father's petition to increase his parenting time, rejected Father's contempt claim against Mother, found Father in contempt for wrongfully claiming A.D. as a dependent on his 2012 tax return, and ordered him to pay $500 in attorney's fees to Mother. The court concluded its order as follows: "Father is warned against excessive requests for additional parenting time. He shall not harass or annoy mother in this regard." Appellee's App. p. 4.

[3] Notwithstanding that warning, two months later, in August 2014, Father filed another petition to modify, again seeking additional weekday overnights during the school year. The trial court held a hearing on September 3, 2014, and two weeks later issued an order denying Father's petition to modify and directing Father to pay the previously awarded $500 in attorney's fees by the end of the month.

[4] On June 29, 2015, Father filed a third petition seeking additional weekday overnights during the school year, as well as an Information for Contempt in which he accused Mother of various wrongdoing. On July 24, 2015, Mother filed her own Information for Contempt, Petition to Modify, and Petition for Attorney's Fees from Father. Among other things, Mother asked the trial court to give her sole legal custody of A.D. and to award her attorney's fees "in an amount sufficient to deter the Father from future frivolous and harassing conduct." Appellant's App. p. 160. Over the next three-and-a-half months,

Father filed four more petitions to modify and three more informations for contempt.

[5]     The trial court held a hearing on all of the parties' motions on November 17, 2015. From the bench, the trial court denied all of Father's petitions to modify and rejected all of his claims of contempt against Mother, and it granted Mother's request for sole legal custody and ordered Father to pay $10,000 toward Mother's attorney's fees within 180 days. After the judge left the courtroom, Father engaged in some sort of "inappropriate conduct," prompting the judge to return and admonish him. Tr. p. 171-73.

[6]     In a written order issued after the hearing, the trial court laid out the reasons for its rulings. Regarding legal custody, the court wrote:

> The Court finds overwhelming evidence establishes the Father's unwillingness to work with the Mother on joint legal custody decisions for [A.D.]. As the sole result of the Father's conduct, the joint legal custody Order has become unreasonable, unworkable, and certainly not in [A.D.'s] best interests. The Court finds the Mother has been extremely patient, civil, and at all times appropriate in her dealings with the Father regarding [A.D.].

Appellant's App. p. 52. The court also explained that all of Father's pending petitions to modify and informations for contempt were "frivolous and without merit" and ordered him to seek leave of court before filing any such documents in the future. *Id.* at 53. Addressing its award of attorney's fees to Mother, the court wrote that "Father's frivolous, repetitive, and harassing pleadings filed

with the Court over the past 14 months were the sole cause for the Mother to incur attorney's fees in defense thereof[.]" *Id*. at 54. Finally, in light of Father's post-hearing behavior, the trial court sua sponte issued an order "restraining and enjoining the Father from harassing or bothering the Mother at any time or place." *Id*. at 55.

Father now appeals.

# Discussion and Decision

Father challenges the trial court's legal custody ruling, its order restricting his ability to file further motions, and its award of attorney's fees to Mother. Such determinations lie within the discretion of the trial court. *See Higginbotham v. Higginbotham*, 822 N.E.2d 609, 611 (Ind. Ct. App. 2004) (legal custody); *Allied Prop. and Cas. Ins. Co. v. Good*, 919 N.E.2d 144, 154 (Ind. Ct. App. 2009) (sanctions); *In re Paternity of M.R.A.*, 41 N.E.3d 287, 296 (Ind. Ct. App. 2015) (attorney's fees). As such, we will reverse only if the decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Higginbotham*, 822 N.E.2d at 611. In considering Father's arguments, we are guided by the "well-established preference in Indiana for granting latitude and deference to our trial judges in family law matters." *Steele-Giri v. Steele*, 51 N.E.3d 119, 125 (Ind. 2016).

# I. Legal Custody

[9]     Father argues that the trial court abused its discretion by finding that joint legal custody is no longer workable.[2]  In paternity proceedings, the question of joint legal custody is governed by Indiana Code section 31-14-13-2.3, which provides, in subsection (a), that "the court may award legal custody of a child jointly if the court finds that an award of joint legal custody would be in the best interest of the child."  In turn, subsection (c) provides:

> (c) In determining whether an award of joint legal custody under this section would be in the best interest of the child, the court shall consider it a matter of primary, but not determinative, importance that the persons awarded joint legal custody have agreed to an award of joint legal custody. The court shall also consider:
>
> > (1) the fitness and suitability of each of the persons awarded joint legal custody;
> >
> > (2) whether the persons awarded joint legal custody are willing and able to communicate and cooperate in advancing the child's welfare;
> >
> > (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

---

[2] Father does not make the argument that he, rather than Mother, should be the custodian if sole legal custody is appropriate.  Therefore, we need only address the trial court's determination that joint legal custody is no longer workable.

(4) whether the child has established a close and beneficial relationship with both of the persons awarded joint legal custody;

(5) whether the persons awarded joint legal custody:

    (A) live in close proximity to each other; and

    (B) plan to continue to do so;

(6) the nature of the physical and emotional environment in the home of each of the persons awarded joint legal custody; and

(7) whether there is a pattern of domestic or family violence.

[10] As stated, the primary consideration in determining whether joint legal custody is appropriate is whether "the persons awarded joint legal custody have agreed to an award of joint legal custody." Here, the parties originally reached such an agreement, but that has obviously changed. This lack of agreement weighs heavily in favor of the trial court's decision to modify the parties' arrangement.

[11] In addition, we have held that consideration (2)—"whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare"—is "[p]articularly germane to whether joint legal custody should be modified[.]" *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1260 (Ind. Ct. App. 2010) (addressing issue in dissolution context, under Indiana Code section 31-17-2-15). If the record before us demonstrates

anything, it is that Father and Mother are currently unable to communicate and cooperate, even with regard to relatively minor issues. Things have gotten so bad that the trial court found it necessary to sua sponte issue an order "restraining and enjoining the Father from harassing or bothering the Mother at any time or place." Therefore, we cannot say that the trial court abused its discretion by terminating joint legal custody and awarding sole legal custody to Mother. *See Higginbotham*, 822 N.E.2d at 612 (affirming modification to sole legal custody where record demonstrated "breakdown in communication and cooperation"); *Carmichael v. Siegel*, 754 N.E.2d 619 (Ind. Ct. App. 2001) (affirming modification to sole legal custody where parents "cannot work and communicate together to raise the children"); *cf. Julie C.*, 924 N.E.2d 1249, 1260 (Ind. Ct. App. 2010) (affirming grant of joint legal custody where one parent testified that parties "communicate best through email and respond fairly promptly to each other"); *Swadner v. Swadner*, 897 N.E.2d 966, 974 (Ind. Ct. App. 2008) (affirming grant of joint legal custody where parties "demonstrated their general ability to communicate and work together to raise their children"); *Walker v. Walker*, 539 N.E.2d 509, 513 (Ind. Ct. App. 1989) (affirming grant of joint legal custody where the parties "demonstrated a willingness and ability to communicate and cooperate").

## II. Restriction on Filing

[12] Father also contends that he "has not exhibited the characteristics of an abusive litigant" and that the trial court therefore abused its discretion by requiring him

to seek leave of court before filing any new petitions to modify, informations for contempt, or similar documents. Appellant's Br. p. 19. We disagree.

[13] Father filed seven petitions to modify in less than two years, including five in just a few months in 2015, most of them seeking relief that had already been denied: additional weekday overnights during the school year. He did so after being explicitly warned, in June 2014, "against excessive requests for additional parenting time." Appellee's App. p. 4. He also filed four informations for contempt during the same stretch in 2015, all of which the trial court found to be frivolous and without merit.

[14] Father points out that he alleged new and different facts in each of his filings and asserts that this distinguishes him from abusive litigants who file "repetitive" motions. As just noted, though, Father's petitions to modify *were* repetitive, at least on the issue of additional weekday overnights. And, in any event, a filing can be frivolous and meritless even if it is not "repetitive." Father focuses entirely on the issue of repetition and makes no effort to refute the trial court's conclusion that his petitions were frivolous and harassing.

[15] We have recognized the inherent power of our trial courts to impose sanctions in order to maintain their dignity, secure obedience to their process and rules, rebuke interference with the conduct of business, and punish unseemly behavior. *Good*, 919 N.E.2d at 152 (citing *City of Gary v. Major*, 822 N.E.2d 165, 169 (Ind. 2005)). This power "enables courts to protect their institutional integrity and to guard against abuses of the judicial process with contempt

citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary[.]" *Id.* at 153 (quoting *Shepherd v. Am. Broad. Cos., Ind.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)). More recently, our Supreme Court explained, "The courts of this state, after due consideration of an abusive litigant's entire history, may fashion and impose reasonable conditions and restrictions . . . on the litigant's ability to commence or continue actions in this state that are tailored to the litigant's particular abusive practices." *Zavodnik v. Harper*, 17 N.E.3d 259, 266 (Ind. 2014).

[16] Here, we conclude that the trial court acted within its discretion when it found that Father has become an abusive litigant and that some sort of filing limit is necessary to protect Mother from his harassment. Furthermore, while the trial court imposed an additional procedural requirement for the filing of certain documents in the future, it did not bar any type of filing entirely. In other words, Father will still be able to go to the court when he believes that court action is justified; only those petitions that are patently frivolous or redundant would be rejected. Under the circumstances, we decline to disturb the modest restriction imposed by the trial court.

## III. Attorney's Fees

[17] Finally, Father argues that Mother was barred by the doctrine of res judicata from seeking reimbursement for any attorney's fees incurred before the trial court's September 2014 order and that the trial court therefore abused its discretion by including such fees in its award to Mother. Mother does not

respond to Father's res judicata argument, which means that Father need only establish prima facie error to prevail. *See Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014). We conclude that Father has done so.

[18] First, even though the trial court's written attorney's-fees order referred to Father's misconduct "over the past 14 months," i.e., since the previous order in September 2014, *see* Appellant's App. p. 54, it is apparent that the court's award to Mother included at least some fees incurred before the court's September 2014 order. At the hearing on November 17, 2015, Mother testified that, as of November 6, 2015, she had paid $6,804.80 in fees and still owed $3,290.16, a total of $10,094.96.[3] Mother did not provide any sort of itemization, but when questioned by the court, Mother explained that these were all of the fees she had incurred since Father's original petition to modify in November 2013. Having heard Mother's testimony, the trial court ordered Father to pay $10,000, essentially the full amount.

[19] In support of his res judicata claim, Father cites *Small v. Centocor, Inc.*, where we explained:

> The doctrine of res judicata bars litigation of a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. The principle behind this doctrine, as well as the doctrine of collateral estoppel, is the prevention of repetitive litigation of the same dispute. The

---

[3] Mother also testified that she would be responsible for additional fees relating to her attorney's preparation for and attendance at the November 17, 2015 hearing, but she did not specify a dollar figure.

following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, *or could have been*, determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.

731 N.E.2d 22, 26 (Ind. Ct. App. 2000) (citations omitted, emphasis added), *reh'g denied*, *trans. denied*. Here, it is undisputed that the trial court awarded attorney's fees to Mother in its June 2014 order and that it reiterated that award in its September 2014 order. Moreover, even if all possible fee issues were not raised by Mother and determined by the trial court at that time, they certainly could have been. The doctrine of res judicata bars the litigation of both matters that have already been determined and those that "could have been" determined. *See id*. Father has demonstrated at least prima facie error on the issue of attorney's fees. Therefore, we remand this matter to the trial court with instructions to issue a revised fee award that excludes any fees incurred by Mother before the court's September 2014 order.[4]

[20] Affirmed in part and remanded in part.

---

[4] Father also argues that the trial court abused its discretion by ordering him to pay the full $10,000 within 180 days without first inquiring into his ability to do so. In light of our remand of the attorney's-fees issue, we need not address this argument. If the trial court includes a time limit in its revised fee award, Father is free to raise an ability-to-pay objection.

Baker, J., and Najam, J., concur.