

**FILED**

Feb 19 2015, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Lafayette, Indiana

ATTORNEY FOR APPELLEE

Gregg S. Theobald
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Paternity of Snyder,
M.S.,

*Appellant-Petitioner,*

v.

D.A.,

*Appellee-Respondent.*

February 19, 2015

Court of Appeals Cause No.
79A02-1407-JP-497

Appeal from the Tippecanoe Circuit
Court; The Honorable Donald L.
Daniel, Judge;
79C01-1304-JP-20

**May, Judge.**

[1] M.S. (Father) appeals the order denying his request to modify parenting time with his daughter, M.A. We affirm in part and reverse in part.

## Facts and Procedural History

[2] Father and D.A. (Mother) are the parents of M.A., born May 6, 2008. Mother and Father lived together until M.A. was approximately six months old, at which time Father moved to Texas, where he has remained during the relevant proceedings. On March 13, 2012, Mother petitioned for and was granted a protective order against Father. On April 3, 2013, Father filed a petition to establish paternity and custody.

[3] On September 12, 2013, after several filings and hearings on the matter, the trial court entered an order establishing child support, denying Father's request to change M.A.'s name, and allowing Mother and Father to claim M.A. on their taxes in alternate years. The trial court also approved the parties' agreed order regarding Father's visitation with M.A. The order provided visitation would be supervised by therapist Theresa Slayton and it modified the protective order to permit the visitation.

[4] On March 10, 2014, Mother filed a petition to extend the protective order, which was later dismissed at her request. On June 30, 2014, the trial court held a hearing regarding all pending matters in the paternity action, during which Father made argument to extend his parenting time, change therapists, allow regular communication with M.A. via Skype, and allow Father to tell M.A. he is her father. The same day, the trial court entered an order maintaining the

*status quo* of therapeutic visitation for one hour with Slayton, allowing Father weekly communication with M.A. via Skype at Slayton's office, and denying Father's requests to change therapists and tell M.A. he is her father.

## Discussion and Decision

[5] The trial court entered findings of fact and conclusions of law. Therefore,

> we must determine whether the evidence supports the findings and whether the findings support the judgment. The judgment will be reversed only when clearly erroneous. To determine whether the findings or judgment are clearly erroneous, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom.

*Speaker v. Speaker*, 759 N.E.2d 1174, 1179 (Ind. Ct. App. 2001) (citations and internal quotation marks omitted). We will not reweigh the evidence or reassess the credibility of the witnesses before the court. *Speed v. Old Fort Supply Co., Inc.*, 737 N.E.2d 1217, 1219 (Ind. Ct. App. 2000). Rather, we will affirm if there is sufficient evidence of probative value to support the decision, viewing the evidence most favorable to the judgment and the reasonable inferences drawn therefrom. *Id.*

[6] Because the court's entry of findings was *sua sponte*, we review any issue on which the court has not made findings under a general judgment standard. *Myers v. Leedy*, 915 N.E.2d 133, 140 (Ind. 2009). We affirm a general judgment on any legal theory supported by the evidence. *Id.*

## 1. *Modification of Existing Restrictions*

[7] "The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child." Ind. Code § 31-17-4-2. In determining if modification is appropriate, the trial court considers the "mental and physical health of all individuals involved." Ind. Code § 31-17-2-8.

[8] We review[1] the trial court's order as to these proposed modifications as follows:

> We review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters. In the initial custody determination, both parents are presumed equally entitled to custody, but a petitioner seeking subsequent modification bears the burden of demonstrating that the existing custody should be altered. When reviewing a trial court's decision modifying custody, we may not reweigh the evidence or judge the credibility of the witnesses. Instead, we consider only the evidence most favorable to the judgment and any reasonable inferences therefrom.

*Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010) (citations omitted).

---

[1] Father asserts our standard of review should be based on the court's placement of restrictions on his parenting time, which would impose on Mother a burden to prove Father's parenting time should be restricted. We disagree. While a party requesting a restriction on parenting time initially has the burden to prove endangerment or impairment as required by statute, *In re Paternity of P.B.*, 932 N.E.2d 712, 719 (Ind. Ct. App 2010), Father agreed to some restrictions as part of the Settlement Agreement. His petition to remove the restrictions is a request to modify that original custody agreement. Thus, we apply the standard of review for modification to the trial court's order as to these restrictions.

[9] The trial court ordered:

> 1. [Father's] parenting time shall continue to be supervised by a therapist.
>
> 2. [Father] and [M.A.] shall have the opportunity to communicate by Skype once each week for up to fifteen minutes.
>
> 3. Said Skype visits will be supervised by Theresa Slayton or a member of her staff.
>
> 4. Each party shall pay one half of the cost of the Skype calls and the supervision fee.
>
> * * * * *
>
> 7. [Father's] request that the Court order a different therapist is denied.

(App. at 41-42.)

[10] At the time of the order in the instant case, Father had attended six therapeutic visitation sessions with M.A. since the September 12, 2013, order. The therapist, Slayton, testified visits were going well but expressed concern regarding the consistency of Father's visits. Father had seen M.A. only five hours in nine months, missed one visit, and indicated he might take a job overseas, which would effectively terminate the therapeutic visitation with M.A. for an extended period of time.

[11] Father agreed to the initial restrictions on his parenting time and did not appeal the 2013 order continuing those restrictions. He has not demonstrated the

findings were unsupported by evidence and he has not demonstrated there was a change in circumstances to warrant a change in parenting time beyond the modification that now permits Father to talk to M.S. via Skype one time each week. His argument is an invitation for us to reweigh the evidence, which we cannot do. *See Speed*, 737 N.E.2d at 1219 (court on appeal cannot reweigh the evidence supporting the trial court's findings).

## *2. Order of New Restriction*

However, we find error regarding the trial court's denial of Father's request to tell M.A. he is her father. In parenting time disputes, our collective goal in Indiana is to seek an environment in which a child can have a "'well-founded relationship with each parent.'" *Hatmaker v. Hatmaker*, 998 N.E.2d 758, 761 (Ind. Ct. App. 2013) (quoting *Appolon v. Faught*, 796 N.E.2d 297, 300 (Ind. Ct. App. 2003)). This goal recognizes "[t]he right of non-custodial parents to visit with their children [as a 'sacred and precious privilege.'" *Id.* Nonetheless, parenting time in paternity cases can be restricted under Indiana Code § 31-14-4-1(a), if the court finds that "parenting time might: (1) endanger the child's physical health and well-being; or (2) *significantly* impair the child's emotional development." (emphasis added). We review these decisions for an abuse of discretion. *Id.* "A trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Id.*

Father's parental status is determined by statute; that is, once paternity is established or acknowledged, Father *is* M.A.'s birth parent. Ind. Code § 31-9-2-

10.   Once paternity has been established, the named father receives rights and responsibilities, including becoming subject to a child-support order.  Ind. Code § 16-37-2-2.1.  Indeed, parental rights and responsibilities are so important that once paternity is established it may not be disestablished, unless fraud, duress, or a material mistake of fact is shown to have existed at the time the paternity affidavit was executed.  *In re Paternity of T.M.,* 953 N.E.2d 96, 98 (Ind. Ct. App. 2011), *trans. denied*; *See also* Ind. Code § 16-37-2-2.1(l).

[14]   In this case, the record reveals that Father's paternity was established, and a support order was entered.  In addition, Father's parenting time was initially restricted because of an allegation of domestic violence against Mother.  Since the trial court's initial order, Father has exercised infrequent visitation that is supervised by Slayton.  Slayton believes that Father has not "earned the title" of "dad[]"; that this revelation would result in six-year-old M.A. "spending more time trying to figure out who everybody is at her age[]"; and Father's desire to inform his daughter of his status should be used as leverage to move him toward more frequent visits.  (Tr. at 8.)  While this goal is laudable, it is not a legally sufficient basis for denying a Father the ability to proclaim his status to his child.

[15]   There is no evidence in the record suggesting how M.A.'s physical health or emotional development would be impaired by telling M.A. that Father is her biological father.  *See* Ind. Code § 31-14-14-1(a); *Farrell v. Littell*, 790 N.E.2d 612 (Ind. Ct. App. 2003) (statute requires specific finding of physical endangerment or emotional impairment prior to imposing restriction).  As such a finding is

required by statute, the trial court erred when it denied Father's request to tell M.A. he is her father, and we accordingly reverse that portion of the trial court's decision.

[16] Affirmed in part, reversed in part.

Barnes, J., and Pyle, J., concur.