## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 11 2017, 5:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Laura Boyer King
Scott & Aplin LLC
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Tia R. Brewer
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Ashley E. Moore,<br>*Appellant-Defendant*,<br><br>v.<br><br>David A Nacke,<br>*Appellee-Plaintiff*. | May 11, 2017<br><br>Court of Appeals Case No.<br>27A04-1609-DR-2207<br><br>Appeal from the Grant Superior Court<br><br>The Honorable Warren Haas, Judge<br><br>Trial Court Cause No.<br>27D03-1307-DR-236 |

**Brown, Judge.**

[1] Ashley E. Moore ("Mother") appeals the trial court's Order Modifying Parenting Time in favor of David A. Nacke ("Father"). Mother raises two issues, one of which we find dispositive and revise and restate as whether the court abused its discretion by modifying Father's parenting time. We reverse.

## Facts and Procedural History

[2] Mother and Father were married on October 4, 2008, and divorced on May 23, 2014. They have two daughters born from the marriage: A.N, born in 2009, and E.N., born in 2011 (the "Children"). The parties agreed that Mother would have primary physical custody of the Children and that Mother and Father would share joint legal custody. The dissolution decree awarded Father parenting time every other week from Thursday at 1:00 p.m. to Sunday at 10:00 a.m., and then every other week from Thursday at 1:00 p.m. to Friday at 9:00 a.m., and additionally non-overnight midweek parenting time every Wednesday, resulting in four overnight visits in the two-week schedule.

[3] Mother worked as a photographer, and she could perform about ninety percent of her work from home. She schedules her photography sessions when the Children are at school or gone. She has "maybe" two photo sessions away from her home per week during the spring and summer, and in the winter she sees "[m]aybe one (1) a month." January 29, 2016 Transcript at 13.

[4] On November 18, 2015, Father filed a Petition to Modify Parenting Time, a Petition for Citation, and a Motion for Change of Judge, in which he requested that his Wednesday parenting time be modified to overnight visits for two

additional overnights in the two-week schedule. Father's request for a change of judge was granted, and the case was transferred to Grant Superior Court 3. On December 16, 2015, Mother filed a Petition to Modify Parenting Time and Child Support, in which she requested that one Thursday be modified to non-overnight midweek parenting time, which would result in one fewer overnight for Father in the two-week schedule.

[5] On January 29, 2016, the court held a hearing on the parents' petitions to modify parenting time and child support. At the hearing, the parties came to an agreement regarding the use of care providers for the Children and stipulated that if either parent needed to leave the Children, it was acceptable for their parents to care for the Children as part of that parent's parenting time. Following the stipulation, Father withdrew his Petition for a Citation.

[6] At the hearing, Father introduced a recorded telephone conversation between him and Mother from November 5, 2015, which the trial court admitted over Mother's objection. During the call, Mother used foul language and insults, including, "I am sick of you," and "[y]ou're an idiot. You're a f------ idiot . . . ." January 29, 2016 Transcript at 115-116. After hearing the recording, the court stated, "[u]ntil I heard that recording, I thought I had two (2) marvelous parents putting the needs of the children first in most cases, working with one another well and, uh, unfortunately then the splash of water went on that. So that makes it very difficult." *Id*. at 120. The court further stated that Mother, "just really, really, um, did poorly. And I'm expecting better of you," and after

Mother expressed disappointment in herself, the court continued: "Good. So, this is a great chance to do better." *Id.*

[7]  On February 3, 2016, the court issued an Order Modifying Parenting Time stating in part:

> 4.  Mother is self-employed as a professional photographer and is often busy working in that capacity on weekends. . . .
>
> 5.  The parties are equally good when it comes to providing care, love, and attention to the children.
>
> 6.  At some point Mother began using Father's desire for "extra" parenting time as a club or leverage against him, instead of putting the best interests of the children first. The Court finds it necessary to modify the existing parenting time orders. To best accommodate the parties' schedules, the Court modifies the parenting time order as follows:
>
> > A.  Every other week from Thursday at 3:00 p.m. until Sunday at 5:00 p.m. Father is not required to take the children to church, but may do so, if he wishes.
> >
> > B.  Every other week from Thursday at 3:00 p.m. until Sunday at 8:00 a.m. This will make it possible for Mother to take the children to church on that Sunday.
> >
> > C.  The other provisions of the Parenting Time Guidelines are incorporated. . . .

Appellant's Appendix Volume II at 14.

[8]  On February 11, 2016, Mother filed a Motion to Clarify Order Modifying Parenting Time concerning the court's ruling as it pertained to the summer

months, and on March 4, 2016, Mother filed a notice of appeal. On July 7, 2016, this Court entered an order dismissing the appeal, without prejudice, because the February 3, 2016 order was not a final appealable order. The trial court held a hearing on August 24, 2016, during which the court stated that "the parenting time was actually designed to . . . work around [Mother's] choice of being a professional photographer." August 24, 2016 Transcript at 4. On August 25, 2016, Mother filed an Amended Motion for Change of Judge, and the motion was denied the next day.

[9] On August 26, 2016, the court issued an Order Modifying Child Support and Clarifying Parenting Time stating that "summer parenting time was to be 1 full week with Father and 1 full week with Mother during the girls' summer vacation from school." Appellant's Appendix Volume II at 22. The court also stated in its order as follows:

> Happily, it seems Mother and Father are good parents and have created a loving environment for their children despite their personal and courtroom disputes.
>
> * * * * *
>
> The parenting time order was the Court's effort to reduce uncertainty and to accommodate Mother's work schedule as a professional photographer. The traditional parenting time order didn't work for Mother and she was using Father's parenting time as a vehicle to punish Father. During her testimony on January 29, 2016, and again on August 24, 2016, the Court was impressed with how pleasant, professional, and caring she presented herself to be. Unfortunately, outside the courtroom her demeanor was quite different.
>
> * * * * *

> Despite the differences presented at the hearings, Mother and Father both appear to genuinely care for their children and the current parenting time order seems to be working for them and the children.

*Id.* at 17, 19, 23. The order included a transcript of the November 5, 2015 recorded phone conversation, and afterward the court stated: "The only thing missing from the transcript is the terrible and hateful way Mother made those statements to Father trying to control his contact with the children, the undersigned felt and feels that the parenting time orders entered on February 3, 2016, were and are necessary." *Id.* at 22.

## *Discussion*

[10] The issue is whether the court abused its discretion by modifying Father's parenting time. Where, as here, the court entered findings *sua sponte*, such findings control only as to the issues they cover, and a general judgment will control as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). When a trial court has made findings of fact, we apply the following two-tier standard of review: We determine whether the evidence supports the findings of fact, and whether the findings of fact support the conclusions thereon. *Id.* Findings will be set aside if they are clearly erroneous. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Id.* A judgment is clearly erroneous if it applies the wrong legal standard to properly found facts. *Id.* To determine that a finding or conclusion is clearly erroneous, our review of

the evidence must leave us with the firm conviction that a mistake has been made. *Id.* "A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

A decision about parenting time requires us to "give foremost consideration to the best interests of the child." *Perkinson v. Perkinson*, 989 N.E.2d 758, 761 (Ind. 2013) (quoting *Marlow v. Marlow*, 702 N.E.2d 733, 735 (Ind. Ct. App. 1998), *trans. denied*); *see also* Ind. Code § 31-17-4-2 ("The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. . . ."). Parenting time decisions are reviewed for an abuse of discretion. *Perkinson*, 989 N.E.2d at 761. Judgments in custody matters typically turn on the facts and will be set aside only when they are clearly erroneous. *Baxendale v. Raich*, 878 N.E.2d 1252, 1257 (Ind. 2008). "We will not substitute our own judgment if any evidence or legitimate inferences support the trial court's judgment." *Id.* at 1257-1258. A trial court's finding that modification is in a child's best interest must be either explicit or implicit in its order. *K.I. ex rel. J.I. v. J.H.*, 903 N.E.2d 453, 458 (Ind. 2009).

Mother asserts that the trial court abused its discretion in modifying parenting time in favor of Father where it made no finding that a modification was in the Children's best interest. She argues that the court "modified the parents' parenting time radically by removing Fridays and Saturdays from [her] schedule altogether" and that there was no evidence such modification was in the Children's best interest. Appellant's Brief at 19. She contends that the court's express purpose of the modification was to accommodate her work

schedule, which is not a proper basis for modification, nor was it supported by the evidence. She further argues that the modification was a result of the court's opinion of her after hearing the November 5, 2015 recording.

[13] Father contends the court did not abuse its discretion and that the findings supported the modification because "[t]he evidence support [sic] the inference that Mother having control over granting or denial of additional parenting time was used a [sic] leverage or a weapon against Father." Appellee's Brief at 9. He asserts that although the court may not have used the specific language, "the evidence presented clearly supports the trial court's decision and that decision is in the best interest of the children." *Id.*

[14] We find that the court failed to articulate how the parenting time modification would serve the Children's best interest. In analyzing the best interests of the children under Ind. Code § 31-17-4-2, it is appropriate to examine the factors enunciated in Ind. Code § 31-17-2-8. *See In re Paternity of Snyder*, 26 N.E.3d 996, 998 (Ind. Ct. App. 2015) (noting that considering the factors in Ind. Code § 31-17-2-8 is appropriate in analyzing the child's best interests under Ind. Code § 31-17-4-2); *see also Milcherska v. Hoerstman*, 56 N.E.3d 634, 638 (Ind. Ct. App. 2016) (noting that the factors listed in Ind. Code § 31-17-2-8 apply when analyzing the best interests of the child in family law matters). Ind. Code § 31-17-2-8 lists the following factors for determining the best interests of the child:

> (1)     The age and sex of the child.
>
> (2)     The wishes of the child's parent or parents.

(3)     The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4)     The interaction and interrelationship of the child with:

  (A)     the child's parent or parents;

  (B)     the child's sibling; and

  (C)     any other person who may significantly affect the child's best interests.

(5)     The child's adjustment to the child's:

  (A)     home;

  (B)     school; and

  (C)     community.

(6)     The mental and physical health of all individuals involved.

(7)     Evidence of a pattern of domestic or family violence by either parent. . . .

[15]     The primary reason given by the court in modifying Father's parenting time was Mother's work schedule. In its February 3, 2016 Order Modifying Parenting Time, it stated that the modification was ordered "[t]o best accommodate the parties' schedules . . . ." Appellant's Appendix Volume II at 14. In its August 26, 2016 Order Modifying Child Support and Clarifying Parenting Time, it reiterated that, "[t]he parenting time order was the Court's effort to reduce uncertainty and to accommodate Mother's work schedule . . . ." *Id*. at 19. However, there was no evidence presented that Mother's work schedule was having a detrimental effect on the Children, or even that her work

interfered with her time with the Children. Indeed, Father's motion did not even request additional weekend parenting time and instead focused on changing his Wednesday parenting time to overnights. In the absence of such evidence demonstrating that the modified parenting time schedule serves the Children's best interest, we do not find that the trial court had a proper basis upon which to modify Father's parenting time.

[16] In addition to Mother's work schedule, the court indicated in its orders that it modified Father's parenting time due to its perception that "Mother began using Father's desire for 'extra' parenting time as a club or leverage against him, instead of putting the best interests of the children first." *Id.* at 14. In its August 26, 2016 order, the court took the unusual step of transcribing the November 5, 2015 recording and included its observation that "[t]he only thing missing from the transcript is the terrible and hateful way Mother made those statements to Father trying to control his contact with the children . . . ." *Id*. at 22. Again, however, the court did not modify Father's parenting time in the manner he requested, and it did not explain how the schedule it set, particularly as opposed to ordering Wednesday overnights as Father requested, better serves the Children's best interest. We find that the parenting time modification orders, which eliminated entirely Mother's parenting time on Fridays and Saturdays during the school year, were crafted in part to punish Mother.

[17] In its February 3, 2016 order, the court made a specific finding that "[t]he parties are equally good when it comes to providing care, love, and attention to the children." *Id*. at 14. In its August 26, 2016 order, it found that "Mother

and Father are good parents and have created a loving environment for their children despite their personal and courtroom disputes," and "Mother and Father both appear to genuinely care for their children . . . ." *Id*. at 17, 23. As discussed, the court did not provide reasons for modifying Father's parenting time on bases that relate to serving the Children's best interest. We therefore conclude that the court abused its discretion when it modified Father's parenting time. We reverse the court's orders and reinstate the previous parenting time schedule provided in the dissolution decree. The court's order modifying child support, contained in the August 26, 2016 order and predicated on the parenting time modification, is also reversed.[1]

## *Conclusion*

[18] For the foregoing reasons, we reverse the court's orders modifying Father's parenting time and child support.

[19] Reversed.

Vaidik, C.J., and Bradford, J., concur.

---

[1] We note that evidence was presented at the August 24, 2016 hearing that since the court's initial February 3, 2016 order, Mother has ceased pursuing employment as a photographer and now is employed by the same school the Children attend as a "technician teacher," in which she teaches "anything like computer or media wise to students." August 24, 2016 Transcript at 15.