**FILED**

May 13 2020, 7:48 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Leanna Weissmann
Lawrenceburg, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE PATERNITY of I.P. by next friend | May 13, 2020 |
| Ashley Souders (Mother), | Court of Appeals Case No. 19A-JP-2852 |
| *Appellant-Petitioner,* | Appeal from the Franklin Circuit Court |
| v. | The Honorable J. Steven Cox, Judge |
| Brandon E. Powell (Father), | Trial Court Cause No. 24C01-1905-JP-322 |
| *Appellee-Respondent.* | |

**Tavitas, Judge.**

## Case Summary

[1] Ashley Souders ("Mother") appeals the trial court's order granting legal and physical custody of I.P. (the "Child") to Brandon Powell ("Father"). We reverse and remand.

## Issue

The sole issue on appeal is whether the trial court abused its discretion by granting custody of the Child to Father.

## Facts

Mother and Father are the parents of the Child, born out of wedlock in February 2012 in Ohio. The same month, Father established paternity of the Child by way of a paternity affidavit in Ohio. The paternity affidavit's attached "Acknowledgement of Paternity Affidavit" includes the "Notice of Rights and Responsibilities and Due Process Safeguards," which states that Mother is the sole residential parent and legal custodian of the Child unless otherwise determined by court order. Appellant's App. Vol. II p. 10. Neither Mother nor Father ever petitioned any court for orders regarding custody, parenting time, or child support regarding the Child until the State of Indiana initiated a child support proceeding.[1]

Although Mother and Father never wed, they lived together with the Child at maternal grandfather's home for approximately one year after the Child's 2012 birth. Mother, Father, and the Child then moved to California in 2013 and lived in two different residences in California; however, Mother and Father

---

[1] Father also has another child for whom he pays child support. Father does not have custody of that child.

decided to return to Indiana in November 2017 to be closer to family and to enroll the Child in Franklin County Schools.

[5] After moving back to Indiana, Mother and Father remained together for approximately one year in their home in Fayette County, where Father still resides. Mother and the Child moved out of Father's home in November 2018. Mother and the Child began living with maternal grandfather in Franklin County again.[2] The Child has lived with Mother since Mother left Father's home; however, in early 2019, the Child stayed with Father for a portion of time while Mother recovered from a car accident due to black ice, causing Mother serious injuries. Mother also spent some time living with Father so she could see the Child. Father testified the Child lived with Father for two months. Otherwise, the Child has resided with Mother. Father has regularly exercised parenting time with the Child every Wednesday night and every other weekend, pursuant to an informal agreement between Mother and Father. Father regularly drove the Child for a few months because Mother has been unable to drive.

[6] Mother applied for benefits for the Child through the State of Indiana. As a result, on May 13, 2019, the State of Indiana filed a Title IV-D action to seek a

---

[2] Father testified that, although he was uncertain, it was possible Mother was staying with her boyfriend or her mother in Shelby County. Father also testified that Mother was "bouncing around" when Mother left Father's home in November 2018. Tr. Vol. II p. 19. Father's petition, however, indicates that Mother's mailing address is maternal grandfather's home, and Mother testified that she moved back in with maternal grandfather.

court order obligating Father to pay child support to Mother. Thereafter, on May 29, 2019, Father filed a petition for custody of the Child. Father's petition alleged that "it is in the best interest of the minor child that the primary care, custody and control be granted to Father due to his stable residence and employment," and that Father "should be granted the primary care, custody and control of said minor child, subject to reasonable parenting time with Mother." Appellant's App. Vol. II p. 18.

[7] The trial court held an evidentiary hearing on Father's petition for custody on September 5, 2019. At the start of the hearing, both parties acknowledged that court ordered custody has never been entered with regard to the Child. Mother's attorney also stated that Mother has "been the custodial parent up to this point." Tr. Vol. II p. 5. Father's attorney disclosed that Father was petitioning for custody because Mother intended to relocate and based on "some behaviors that were occurring earlier in the year." *Id.* Father testified that he is "the more stable parent to have custody." *Id.*

[8] At the time of the hearing, Father resided in Fayette County, and Mother resided in Franklin County with maternal grandfather. Father worked as a stagehand a minimum of four and a maximum of twelve days a month, mostly on weekends, earning $250.00 per day. Mother worked as a nursing assistant five days a week and every other weekend, earning $11.25 per hour.

[9] Father testified that he was requesting custody because of his concerns that: (1) Mother was arrested for OWI in Shelby County on January 15, 2019;[3] (2) the following day, Mother was injured in a car accident; (3) Mother exhibited "signs of instability" for the Child, such as the Child not having a bedroom at maternal grandfather's home; and (4) Mother expressed interest in relocating, according to Father's testimony, to Greenwood or Indianapolis, but according to Father's petition, to Shelby County. *Id.* at 8. Father provided no specific details regarding the timeline of Mother's relocation, and the record is devoid of a notice to relocate or additional evidence that Mother intended to relocate. Father's testimony regarding Mother's relocation was very conclusory, without support or timelines. Father testified he would ensure the Child remained in Franklin County Schools even though Father does not live in Franklin County. Father testified that he would like to move to Franklin County "at some point," but Father did not elaborate on his future plans. *Id.* at 17.

[10] Additionally, Father testified that, although he works many weekends, he can meet the Child's needs on Monday through Friday, and he is "okay" with Mother having the Child every Wednesday, every other weekend, and weekends when Father is away. *Id.* at 11. Father did not provide testimony regarding the specific hours he works on the weekends or identify who cares for the Child while he is away. Father testified that he would be "okay" with

---

[3] The Child was with Father when Mother was arrested. Mother was still on probation at the time of the custody hearing.

sharing legal custody of the Child with Mother, but that Father wanted physical custody. *Id.* at 13.

[11] Regarding Father's financial support of the Child since Mother and the Child left Father's home, Father testified that he paid half the cost of a pair of shoes for the Child, provided transportation for the Child, and contributed to paying for the Child's school lunches.[4] Father also testified that he was willing to pay expenses for the Child, but Mother had declined assistance in the past. After Mother asked for assistance, however, Father told Mother that he could not "keep giving [Mother] money" and that they would "have to get something put in place." *Id.* at 25.

[12] At the end of Father's presentation of the evidence, Mother moved for judgment on the evidence. Mother argued that Father failed to show "the current arrangement is unreasonable or that it's in the best interest of the child." *Id.* at 30. The trial court responded that, "without any further testimony, the Court would be inclined to grant [Father] custody." *Id.* Mother then testified in her case-in-chief.

[13] Mother testified that she has been the Child's primary custodian since leaving Father's home in November 2018 and that she has provided financial support for the Child with little help from Father. Mother also testified that, when she

---

[4] Father also testified that he took the Child shopping for school supplies prior to the beginning of the school year and that he contributed some money toward the Child "at the beginning of this year," but Father was not more specific. Tr. Vol. II p. 26.

and Father were together, Father's primary responsibility was generating income for the family, whereas Mother's primary responsibility was to care for the Child. Mother alleged that Father's petition for custody was prompted by Father's unwillingness to pay child support. According to Mother, Mother and Father discussed Father's petition for custody, and Father told her he filed the petition because he did not want to pay child support and was "tired of paying for everybody all the time." *Id.* at 61. Mother testified she needed support because, when she left Father she had "nothing"; she "didn't work on anything for" herself when she and Father were together; and Father "made it impossible for [her] to work." *Id.* at 41. Mother also testified that she does not often ask Father for financial support because Mother and Father "don't communicate very well." *Id.* at 47.

[14] Mother further testified that: (1) the Child has his own room at maternal grandfather's home; (2) Mother intends to rent an apartment in Franklin County and move out of maternal grandfather's home when she is able to afford her own home[5]; (3) Mother's January accident was a result of black ice; (4) Mother pays maternal grandfather for rent when she can afford it and/or Mother helps maternal grandfather with his business; (5) Mother asked the State for a reduced school lunch expense this school year for the Child, and, accordingly, Father does not have this expense; (6) the Child has good grades in

---

[5] Mother was unable to work for a few months due to the car accident. Mother needed to obtain two paychecks in order to afford the apartment.

school and has been "surprisingly great" with his routine, tr. vol. II p. 59; and (7) according to the Child, the Child "usually" spends weekends with paternal grandmother when he is "supposed to" be with Father. *Id.* at 57.

[15] On November 5, 2019, the trial court granted Father's petition for custody without issuing findings or conclusions thereon. The trial court awarded Father the primary care, custody, and control of the Child and granted Mother reasonable parenting time. Mother now appeals.

## Analysis

[16] Mother argues the trial court erred in awarding custody of the Child to Father. Trial courts have discretion in both initial custody and modification of custody determinations, and we review those determinations for an abuse of discretion. *See In re Paternity of Snyder,* 26 N.E.3d 996, 998 (Ind. Ct. App. 2015) ("We review custody modifications for an abuse of discretion, with a preference for granting latitude and deference to our trial judges in family law matters."); *see also In re B.W.,* 17 N.E.3d 299, 307 (Ind. Ct. App. 2014) ("Child custody determinations fall squarely within the discretion of the trial court and will not be disturbed except for an abuse of discretion.").

[17] The trial court's order did not include any specific findings to support its conclusion, which impacts our review. Neither party requested findings and conclusions, as permitted by Indiana Trial Rule 52; nor did the trial court enter any findings or conclusions sua sponte. "[W]e will[, therefore,] apply a general judgment standard to any issue about which a court made no findings." *Rea v.*

*Shroyer,* 797 N.E.2d 1178, 1181 (Ind. Ct. App. 2003) (citing *Sutton v. Sutton,* 773 N.E.2d 289, 293 (Ind. Ct. App. 2002)). "[W]e will reverse the award of custody only if that determination is clearly against the logic and effect of the facts and circumstances before the court or the reasonable inferences to be drawn therefrom." *Wallin v. Wallin,* 668 N.E.2d 259, 260 (Ind. Ct. App. 1996) (citing *Hegerfeld v. Hegerfeld,* 555 N.E.2d 853, 856 (Ind. Ct. App. 1990)).

[18]     Finally, in our review, we note that Father has not filed an appellee's brief which also, to a lesser extent, has impacted our review. "When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error." *In re Paternity of S.C.*, 966 N.E.2d 143, 148 (Ind. Ct. App. 2012), *aff'd on reh'g*, 970 N.E.2d 248 (Ind. Ct. App. 2012), *trans. denied*. "In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it." *Id.* "Moreover, we will not undertake the burden of developing legal arguments on the appellee's behalf." *Id.* We are faced with the threshold question of whether the trial court entered an initial custody order or a modification of custody order. [6]

---

[6] We pause briefly to note that, during the evidentiary hearing, the parties themselves were seemingly unclear which standard applied. Father's initial petition and remarks at the beginning of the hearing imply that the petition was an initial custody determination. In contrast, when asked by Mother's counsel why Father was petitioning for custody, Father testified that he was "prompted by [Mother's] behavior from January" to file the petition. Tr. Vol. II p. 24. This would appear to indicate that custody was being modified. Similarly, Mother's argument that Mother has always had custody and Mother's movement for judgment on the evidence, arguing that Father had not shown the "current arrangement is unreasonable," demonstrates that Mother believed the action was a modification of custody. *Id.* at 30.

[19]   The distinction between the standards is significant because:

> In determining which standard is appropriate in this paternity case, we must look to the relationship between the governing statutes and the unique facts of the case. [Indiana Code Section] 31-14-13-1 provides that "[a] biological mother of a child born out of wedlock has sole legal custody of the child, unless a statute or court order provides otherwise. . . ." [Indiana Code Section] 31-14-13-2[7] provides that the court shall make an initial custody determination in a paternity case by looking at all relevant factors, including the factors listed in subsections (1) through (8) of the statute, to determine the best interests of the child. In doing so, the court is not to entertain a presumption favoring either parent. On the other hand, [Indiana Code Section] 31-14-13-6[8] provides a stricter standard for modification of a child custody order in a paternity action. A trial court may modify an order only if the petitioner establishes that modification is in the best interests of the child and that there is a "substantial change in one (1) or more of the factors that the court may consider under [Indiana Code Section 31-14-13-2]. . . ."

*In re Paternity of Winkler*, 725 N.E.2d 124, 127-28 (Ind. Ct. App. 2000).

---

[7] Indiana Code Section 31-14-13-2 states: "The court shall determine custody in accordance with the best interests of the child. In determining the child's best interests, there is not a presumption favoring either parent. The court shall consider all relevant factors, including the following: . . ." We discuss the factors in our decision, below.

[8] Indiana Code Section 31-14-13-6 states in full:

> The court may not modify a child custody order unless:
>
> > (1) modification is in the best interests of the child; and
> >
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 2 and, if applicable, section 2.5 of this chapter.

[20] Mother argues Father's petition was a petition to modify custody because she has had legal custody of the Child since his birth pursuant to Indiana Code Section 31-14-13-1, which states: "A biological mother of a child born out of wedlock has sole legal custody of the child, except as provided in IC 16-37-2-2.1, and unless a statute or court order provides otherwise, . . ." and unless certain exceptions, which are not present here, apply.[9] The paternity statute in Ohio, where the Child was born, similarly states: "An unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court of competent jurisdiction issues an order designating another person as the residential parent and legal custodian. . . ." Oh. St. § 3109.42(A).

[21] Moreover, the Ohio paternity affidavit signed by Father included an attached "Notice of Rights and Responsibilities and Due Process Safeguards." Appellant's App. Vol. II p. 10. The Acknowledgement states, in relevant part:

> A man who is determined to be the father of a child has the right to petition a court for an order granting him reasonable parenting time with respect to the child (pursuant to section 3109.12 of the

---

[9] The exceptions enumerated in Indiana Code Section 31-14-13-2, include:

    (1) IC 12-26 (involuntary commitment of a child).

    (2) IC 29-3 (guardianship and protective proceedings under the probate code).

    (3) IC 31-14 (custody of a child born outside of a marriage).

    (4) IC 31-34 (child in need of services).

    (5) IC 31-37 (delinquent child).

    (6) IC 35-46 (offenses against the family).

    (7) IC 35-50 (criminal sentences).

    (8) An order by a court that has jurisdiction over the child.

Revised Code)[10] and petition the court for custody of the child (pursuant to section 2151.23 of the Revised Code). Pursuant to section 3109.042 [of the Ohio Revised Code], an unmarried female who gives birth to a child is the sole residential parent and legal custodian of the child until a court issues an order designating another person as the residential parent and legal custodian. The court will treat the mother and father on an equal standing when making this designation.

*Id.*[11]

[22] As a result, for the entirety of the Child's life, Mother has had legal and physical custody of the Child. Thus, in order for Father to obtain custody of the Child after Mother's seven years of sole physical and legal custody, Father's petition should have been construed as a petition to modify custody.

---

[10] This portion of the Ohio Revised Code states, in part:

> If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code or has been determined in an action under Chapter 3111. of the Revised Code to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child.

Oh. St. § 3109.12

[11] Indiana's paternity statute, similarly, states:

> However, if a paternity affidavit is executed under this section, unless another determination is made by a court in a proceeding under IC 31-14 or the child's mother and the person described in subsection (g)(2) agree to share joint legal custody of the child as described in subsection (h), the child's mother has sole legal and primary physical custody of the child.

Ind. Code § 16-37-2-2.1(j). We observe that, while this statute gives an unmarried, biological mother both sole legal and primary physical custody, Indiana Code Section 31-14-13-1 states that an unmarried, biological mother has sole legal custody but does not discuss physical custody. We encourage the General Assembly to consider this inconsistency.

Accordingly, Father was required to meet the requirements of Indiana Code Section 31-14-13-6.

[23] Indiana Code Section 31-14-13-6 required Father to prove that: (1) modification is in the best interests of the Child; and (2) there has been a substantial change in one or more of the factors set forth in Indiana Code Sections 31-14-13-2 or 31-14-13-2.5.[12] We address each requirement, in turn, below.

### *A. Substantial Change*

[24] First, we address whether there has been a substantial change in one or more of the factors articulated in Indiana Code Section 31-14-13-2. Those factors are as follows:

> (1) The age and sex of the child.
>
> (2) The wishes of the child's parents.
>
> (3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.
>
> (4) The interaction and interrelationship of the child with:
>
>> (A) the child's parents;

---

[12] Indiana Code Section 31-14-13-2.5 prescribes additional factors for the trial court to consider if a de facto custodian has cared for the Child. This subsection is inapplicable here.

> (B) the child's siblings; and
>
> (C) any other person who may significantly affect the child's best interest.
>
> (5) The child's adjustment to home, school, and community.
>
> (6) The mental and physical health of all individuals involved.
>
> (7) Evidence of a pattern of domestic or family violence by either parent.
>
> (8) Evidence that the child has been cared for by a de facto custodian, and if the evidence is sufficient, the court shall consider the factors described in section 2.5(b) of this chapter.

I.C. § 31-14-13-2. Importantly, in making a child custody determination under Indiana Code Section 31-14-13-2, a trial court "shall" consider each factor described above. We have little to no evidence regarding these factors. We will consider the limited evidence presented on these factors keeping in mind that Father had the burden of proof. The evidence presented regarding the factors the trial court was required to consider is as follows.

[25] Both Mother and Father wish to have custody of the Child. Father did not, however, pursue custody of the Child until May 2019, shortly after the State filed the Title IV-D child support action on Mother's behalf. Father testified that the Child moved out of his home with Mother in November 2018, stayed with Father while Mother recovered from her early 2019 accident, and the Child again moved out with Mother in March 2019 once Mother recovered.

Father did not object to Mother having custody of the Child until Mother sought his financial support.

[26] No evidence was submitted by Father or Mother with regard to the Child's wishes, and little evidence was presented regarding "the interaction and interrelationship of the Child with the Child's parents, siblings, and any other person who may substantially affect the Child's best interests." I.C. § 31-14-13-2(4).

[27] Father testified that the majority of his work occurs on the weekends; however, Father also testified that he exercises parenting time with the Child every other weekend. Father testified that he is the more stable parent and that Mother has "never" demonstrated stability. Tr. Vol. II p. 14. Father did not, however, present specific evidence regarding why he is more stable or regarding Mother's lack of stability. Father made only vague assertions regarding the potential that Mother spent time at her mother's home or her boyfriend's home and that Mother was "bouncing around" homes for a time. *Id.* at 19.

[28] On the other hand, Mother testified:

> [Father] is not affectionate, he does not spend time with [the Child], he is not hands-on with him. I'm always the one to throw the ball or do stuff like that. I'm always the one teaching like things on vehicles and I pretty much have done all the hard work.

*Id.* at 51. Mother testified that she has taught the Child "religion, kindness, hard work" and how to "be his own person, to be nice, sensitive." *Id.* at 50.

Mother has supported the Child without much contribution from Father. Mother was the Child's primary caretaker when the couple was together. Moreover, Mother testified that the Child spends large portions of time with paternal grandmother during Father's parenting time on weekends because Father is working. Mother testified that, since she moved out of Father's home, Mother has only lived with maternal grandfather. Mother testified that her long-term plan was to move; however, in the short term, Mother was looking for an apartment in Franklin County for herself and the Child.

[29] Father testified that he has another child, for whom Father pays child support, but Father does not have custody of that child. Father did not testify whether his other child and the Child have a relationship. Father testified that he has family nearby who can help him support the Child, but Father did not provide any specific details and did not present any evidence regarding other residents in his home.[13] According to Mother, although the Child appears to spend large portions of time with paternal grandmother during Father's parenting time on the weekends, no evidence was presented regarding the Child's relationship with paternal grandmother.

[30] Father's petition alleged and Father testified that the Child lives with maternal grandfather—with whom the Child previously lived along with both Mother

---

[13] Father testified he has a great support system "at [his] house. . . ." Tr. Vol. II p. 12.

and Father. Father did not provide any evidence as to the relationship between the Child and Mother or maternal grandfather.

[31] Father testified that Mother intends to move; however, Father was not specific about Mother's plans to relocate. Father testified the Child does not have his own room at maternal grandfather's home; however, Father did not present any evidence of an adverse impact upon the Child's adjustment to home, school, or community. No evidence was presented that Father has offered to care for the Child while Mother is working if Father is available. Father has been providing transportation for the Child; however, Father did not present evidence that Mother's temporary inability to provide transportation results in an adverse impact upon the Child's adjustment to home, school, or community.

[32] Mother, on the other hand, testified that the Child receives good grades and has adjusted well to Mother's new work schedule. Mother has made arrangements for and has been responsible for childcare for the Child. Mother testified that the Child, in fact, does have his own room at maternal grandfather's home.

[33] Father presented evidence regarding Mother's health. Mother was charged with OWI in January 2019 in Shelby County; however, it is Mother's only criminal offense, and the Child was not present. The next day, Mother was in a car accident due to black ice, and she was badly injured; however, Mother is recovering and has started her job as a nursing assistant. No evidence was presented with regard to the Child's mental or physical health or Father's mental or physical health.

[34] Based on the foregoing, Father failed to present evidence to show a substantial change in at least one of the above Indiana Code Section 31-14-13-2 factors. Father has failed to meet his burden with regard to the requirement of a substantial change in circumstances as required pursuant to the custody modification statute.

## B. Best Interests

[35] Mother argues that, even if there was evidence of a substantial change in circumstances, Father presented no evidence that modification was in the best interests of the Child.

[36] At the hearing, when asked why it was in the Child's best interests that Father have custody, Father testified that the Child needs stability, which he has displayed "for several years" and which Mother has never demonstrated. Tr. Vol. II p. 14. Father did not want the Child to get "moved around a bunch" and believes that he is the more stable parent. *Id.* Father's petition merely states that it is in the Child's best interest to be in Father's custody due to Father's stable residence and employment. The evidence presented, however, does not indicate that Mother has moved repeatedly or lacks stability. To the contrary, Mother's prior moves occurred when she lived with Father.

[37] The evidence clearly shows Mother has supported the Child without much contribution from Father and was the Child's primary caretaker when the couple was together and after the couple split. Father has not paid child support for the Child since Mother and the Child moved away from Father

despite his acknowledgement, via the paternity affidavit, that he is the Child's father.

[38] In light of the foregoing, no evidence exists in the record from which we could conclude that modification of custody to Father is in the Child's best interests.

[39] Based on the lack of evidence in the record, the lack of findings and conclusions thereon of the trial court, and, to a lesser extent, the lack of an appellee's brief, we find insufficient evidence was presented to warrant a change of custody. The trial court abused its discretion in modifying custody of the Child to Father. Accordingly, we reverse and remand to the trial court.

## Conclusion

[40] The trial court abused its discretion in granting custody of the Child to Father. We reverse and remand for proceedings consistent with our opinion.

[41] Reversed and remanded.

Riley, J., and Mathias, J., concur.